UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **BRADLEY S. LOGAN, M.D.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:05-0006 |
| ) | Judge Echols |
| **HCA, INC.,** *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the Court are the Report and Recommendation entered by the United States Magistrate Judge on May 23, 2005, (Docket Entry No. 85), and Plaintiff's Objections (Docket Entry No. 86.) Defendants have filed Responses to the Objections by incorporating the arguments made in their Memoranda in Support of their Motions to Dismiss. (Docket Entry Nos. 87 & 88.) The Magistrate Judge recommends that this Court take the following actions: (1) grant the various Defendants' Motions to Dismiss (Docket Entry Nos. 37, 45, 47, 49, 56 and 61); (2) dismiss this action; and (3) deem Defendants' Motion to Strike (Docket Entry No. 55) moot.

### I. STANDARD OF REVIEW

When a party makes timely objections to a Report and Recommendation, the Court "shall make a *de novo* determination of the matter and may conduct a new hearing, take additional evidence, recall witnesses, recommit the matter to the Magistrate Judge for further proceedings and consideration, conduct conferences with counsel for the affected parties, and receive additional arguments,

1

either oral or written, as the District Judge may desire." L.R.M.P. 9(b)(3). See also, Fed.R.Civ.P. 72(a).

## II. ANALYSIS

Plaintiff, a physician, was a member of the medical staff at St. Petersburg General Hospital ("St. Petersburg") in St. Petersburg, Florida. After resigning that position, he moved to Lawrenceburg, Tennessee where he practiced at Crockett General Hospital ("Crockett"). Plaintiff then left that position, having already signed a Recruiting Agreement for clinical privileges at the Skyline Medical Center ("Skyline") in Nashville. The Recruiting Agreement was ultimately rescinded and a second application withdrawn.

Because of the events which led to his resignations at St. Petersburg and Crockett, as well as the denial of privileges at Skyline, Plaintiff filed suit in this Court against dozens of individual and corporate defendants. The Complaint is long, spanning almost eighty pages. Such "length and breadth," Plaintiff explains, was necessary to "document[] almost ten years of malfeasance by multiple entities and agents[.]" (Docket Entry No. 86 at 1.)

Plaintiff alleges he was harmed by assorted acts of one or more of the Defendants relating to his employment at St. Peterburg and Crockett General Hospitals, and that misconduct on the part of some Defendants led to the denial of privileges at Skyline. A bevy of claims for relief are asserted, including fraudulent misrepresentation; "suppression" or misrepresentation by

2

concealment; conspiracy; negligence; "wantonness"; breach of contract; abuse of process; violations of the Racketeer Influenced Corrupt Organizations Act ("R.I.C.O."), 18 U.S.C. § 1961 *et seq.*; "stigmatizing statements" and failure to provide due process in violation of 42 U.S.C. § 1983; and violations of the Health Care Quality Improvement Act of 1986 ("HCQIA").

The Magistrate Judge concluded that Plaintiff's Complaint failed to state a claim upon which relief could be granted under 42 U.S.C. § 1983, the HCQIA, or R.I.C.O. That being so, there remained only state law claims. Since federal question jurisdiction is the basis for this Court's original jurisdiction, the Magistrate Judge recommends that this Court decline to exercise supplemental jurisdiction over the state law claims and dismiss the entire action.

Plaintiff takes issue with respect to the Magistrate Judge's conclusion his Complaint fails to state a claim under any of the federal statutes cited. He also takes issue with factual statements contained in the Report and Recommendation.

A. **Objections To Factual Statements**

Plaintiff first asserts "[t]he Report contains an error in substance when it states that Plaintiff, while residing in Florida[,] resigned his position 'because of a dispute arising over his care of certain patients.'" (Docket Entry No. 86 at 2.) Instead, Plaintiff maintains a more accurate characterization is that he resigned "when it became apparent that St. Petersburg General Hospital was acting in an aggressive and harassing matter

3

[sic] in reviewing patient charts not only of the Plaintiff but others; soon it became evident that violations of HCQIA were occurring." (Id.)

Plaintiff's own characterization of this "fact" shows the Magistrate Judge did not improperly describe what happened. In Plaintiff's own words, patient charts were being reviewed by the hospital, suggesting that there was a dispute or question over patient care. Regardless, this "fact" is not relevant in ruling on the legal question of whether this Court has federal question jurisdiction.

Plaintiff next objects because while the Report and Recommendation states that an administrator of St. Petersburg notified the National Practitioner Data Base ("NPDB") and the Florida Agency for Healthcare Administration ("AHCA") that Plaintiff had resigned while under investigation, the Report dismisses any act of mail or wire fraud. Obviously, this is not an Objection to the fact recounted, i.e., that the NPDB and AHCA were notified Plaintiff resigned while under investigation, but only an objection to whether that "fact" was properly taken into account in ruling on the Motions to Dismiss.

Plaintiff claims "[t]he Report also errs in asserting in the Background of the case when it proffers as truth that the Recruiting Agreement with Skyline was rescinded 'because the plaintiff had failed to commence the full-time practice of medicine in the Skyline community on or before January 1, 2002.'" (Id. at 2-3.) Although Plaintiff recognizes "a letter certainly exists

4

representing that as the stated reason," (id. at 3), the Report and Recommendation fails to assert that another doctor with a "virtually identical Agreement" (id.) in similar circumstances did not have her agreement rescinded, nor does the Report and Recommendation indicate "that concurrent events such as falsification of meeting dates were being perpetrated." (Id.)

Tellingly, Plaintiff does not dispute that he did not in fact commence the full-time practice of medicine in the Skyline community by the set date. In this light, the "fact" identified by the Magistrate Judge cannot be viewed as erroneous–only that other "facts" were not included. Given the length of Plaintiff's Complaint, it was necessary for the Magistrate Judge to pare down the facts and set forth only those which were relevant to determination of the legal issues at hand. Besides, even if another doctor in allegedly similar circumstances was treated differently, and even if dates of meetings were misstated (or in Plaintiff's words "falsified"), this would not change the Court's conclusion that Plaintiff does not have a federal claim so as to support this Court's jurisdiction.

Finally in regard to the facts, Plaintiff asserts that while the Magistrate Judge was correct in setting forth a chronology of events which related to Plaintiff's failure to obtain privileges at Skyline, the Report and Recommendation failed to include "key occurrences such as the Credentials Committee meeting in December, 2002 or the Hearing Committee in May, 2003." Id. Again, given the abundance of "facts" recited throughout the seventy-nine page

5

Complaint, it would be virtually impossible for any decision to coherently contain all of the "facts." Moreover, inclusion of these "key occurrences" would not change the outcome–Plaintiff has failed to state a federal claim upon which relief can be granted.

**B. Objections to Legal Analysis**

Plaintiff concedes this Court's jurisdiction to entertain his claims rests upon the viability of a cause of action under 42 U.S.C. § 1983, the HCQIA and/or R.I.C.O. (Docket Entry No. 86 at 3-4.) Accordingly, the Court will address Plaintiff's Objections to the Magistrate's Recommendations regarding the same.

**1. *Claim Under 42 U.S.C. § 1983***

In the Report and Recommendation, the Magistrate Judge noted that in order to establish a claim under Section 1983, Plaintiff must show that Defendants, while acting under color of state law, deprived Plaintiff of some right or privilege guaranteed by the Constitution or laws of the United States. (Docket Entry No. 85 at 5.) The Magistrate Judge also noted the Defendants in this case were not individuals or entities with direct authority to act on behalf of the state and therefore, to be liable under Section 1983, it was necessary that their actions be fairly attributable to the state. Since Plaintiff failed to offer any "factual allegations that would seriously suggest that the defendants' actions are fairly attributable to either Florida or Tennessee," (id.), Plaintiff failed to state a claim under 42 U.S.C. § 1983.

Plaintiff asserts "[t]he Report errs in stating: 'To state a claim for relief under 42 U.S.C. 1983, the plaintiff must plead and prove that the defendants, while acting...'" (Docket Entry No. 86

6

at 5.)  It is more correct to say, Plaintiff contends, that "to succeed in *proving* a claim the defendant must first plead and then prove."  Id. (emphasis in original).

Perhaps this is a scrivener's error on Plaintiff's part since *Defendants* need not prove anything with respect to Plaintiff's claims.  Regardless, the Magistrate Judge did not err in writing in the conjunctive, even though proof follows only if a claim is properly pled.  In fact, in a recent case, the United States Court of Appeals for the Sixth Circuit, on appeal from the grant of a motion to dismiss, wrote:  "All § 1983 violations depend on the plaintiff's ability to *plead and prove* that a defendant: 1) acting under the color of state law 2) deprived a plaintiff of a right secured by the Constitution or law of the United States."  Stanley v. City of Norton, 124 Fed.Appx. 305, 309, 2005 WL 65522 at *4 (6th Cir. Jan. 6, 2005)(emphasis added).

The linchpin of Plaintiff's objection to the Report and Recommendation about section 1983 liability is his belief that "the 'state law' in question here arises from the United States Congress."  (Docket Entry No. 86 at 7.)  In this vein, Plaintiff writes "[u]nder cloak of authority and qualified immunity granted by Congress in HCQIA, the Defendants performed their racketeering acts, which resulted in the placement of stigmatizing statements into a repository founded by and overseen by the federal government, as well as loss of property memorialized by the Recruiting Agreement with Skyline."  (Id. at 5.)  Plaintiff then writes:

7

> Under HCQIA the government has, by reciprocity in authority and protection, entwined itself with hospitals for the responsibility of peer review activity, has set standards for its performance and reporting, has provided qualified immunity for its participants acting in their official capacities and when compliant with the HCQIA due process requirements, and has imposed penalties on participants who fail to report their findings to NPDB.

Id. Plaintiff also states "[o]ne of the very reasons this claim was brought in a federal court is that the federal HCQIA is the law being perverted by hospitals and their peer review committees for unintended nefarious purposes." Id. at 10.

Insofar as Plaintiff is suggesting that HCQIA supplies the necessary "state action" for a Section 1983 claim, he is mistaken. As Plaintiff recognizes, the HCQIA is a federal statute. Where actions are taken under color of federal law, and not color of state law, no section 1983 action will lie. Ana Leon T. v. Federal Reserve Bank of Chicago, 823 F.2d 978, 931 (6th Cir. 1987). See also, Sarin v. Samaritan Health Center, 813 F.2d 755, 759 (6th Cir. 1987)(in physician's claim relating to revocation of staff privileges, no state action was found to exist even though hospital was licensed by the state and received federal funds); Medical Society of New Jersey v. Mottola, 320 F.Supp.2d 254, 264 (D.N.J. 2004)(plain reading of statute indicates Congress did not intend HCQIA to allow private individuals to bring section 1983 action); Canady v. Providence Hospital, 903 F.Supp. 125, 127 (D.D.C. 1995)("A decision to restrict staff privileges does not constitute state action.").

8

Perhaps recognizing the difficulty with the assertion that the HCQIA could provide the requisite action "under color of state law" for purposes of section 1983 liability, Plaintiff notes that Tennessee and Florida peer review statutes "depend upon federal HCQIA" and that Tennessee's provisions "reference[s] and combine[s] the federal law [.]" (Docket Entry No. 86 at 7.)

It is true that Tennessee Code Annotated § 63-6-219, which is the Tennessee Peer Review Law, begins by referencing the "applicable policies of the Health Care Quality Improvement Act of 1986." The statute then goes on to note it is "the stated policy of Tennessee to encourage committees made up of Tennessee's licensed physicians to candidly, conscientiously, and objectively evaluate and review their peers' professional conduct, competence, and ability to practice medicine." This grant of statutory authority for peer review, however, does not provide a basis for a claim under Section 1983.

In this regard, the decision in Freilich v. Board of Directors of Upper Chesapeake Health, Inc., 142 F.Supp.2d 679 (D.Md. 2001), aff'd, 313 F.3d 205 (4th Cir. 2002), is instructive. There, a physician filed a seventy-six page complaint against a hospital, assorted individuals, and the government, claiming the hospital and its board of directors participated in "a predetermined and a deliberate scheme and systematic program designed to force her out of [the hospital] in violation of [her] Constitutional Rights and in violation of Maryland's Health Code[.]" Id. at 685.

9

In addressing the doctor's Section 1983 claim, the court in Freilich properly noted that to allege such a claim it was necessary that there be not only action under state law but also that "the party charged with the deprivation must also be a person who may fairly be said to be a state actor." Id. (citing, American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 n.8, 119 S.Ct. 977 (1999)). While the Maryland regulations required hospitals to "establish a formal reappointment process and to collect and review information," the regulations did not require hospitals to deny reappointment and the state played no role in the individual hospital's decision whether or not to reappoint a particular physician. Id. at 686-87. Since the regulatory scheme left the decision to the judgment of the hospitals, "the actions of [the hospital] and the individual hospital defendants are not fairly attributable to the state." Id. at 686. See also Pinhas v. Summit Health Ltd., 894 F.2d 1024, 1033-34 (9th Cir. 1989)(there was no state action even though hospital's peer-review process was statutorily mandated since decision to remove physician's staff privileges was made by private parties).

Likewise in this case, the Tennessee statute cited by Plaintiff does not transform the present Defendants into state actors. Instead, committees made up of licensed physicians are to review their peers' professional conduct.

The Magistrate Judge did not err in concluding that Plaintiff's Complaint failed to state a claim under Section 1983 upon which relief could be granted. Accordingly, Plaintiff's

10

objections relating to his purported Section 1983 claim will be overruled.

**2.   *The HCQIA Claim***

The Report and Recommendation notes that courts have repeatedly held the HCQIA does not establish a private right of action and cites for that proposition Wayne v. Genesis Medical Center, 140 F.3d 1145, 1148 (8th Cir. 1998); Hancock v. Blue Cross-Blue Shield of Kansas, Inc., 21 F.3d 373, 374-75 (10th Cir. 1994) and Bok v. Mutual Assurance, Inc., 119 F.3d 927, 928-29 (11th Cir. 1997). Recently, the United States Court of Appeals for the Eleventh Circuit added its view on the issue holding "[t]here is no express private right of action under the HCQIA." Morris v. Emory Clinic Inc., 402 F.3d 1076, 1083 (11th Cir. 2005).

In his objections, Plaintiff claims he is not disputing the results of a peer review proceeding "but rather is claiming that his due process rights were denied during the peer review proceedings[.]" (Docket Entry No. 86 at 11.) Plaintiff also claims that in enacting the HCQIA, "[t]he federal government had no intention of creating a private system that would deprive physicians of due process rights." (Id. at 11-12.)

While Plaintiff's suggestion may be facially correct, the purpose of the Act was not to protect physicians subjected to peer review. Quite the contrary, the "grant of immunity to review boards strongly suggests that the Act was not enacted to benefit the physician undergoing peer review." Wayne, 140 F.3d at 1148. In any event, the issue is whether the HCQIA provides for a private

11

cause of action. Those Circuits which have addressed the issue uniformly answer the question in the negative and Plaintiff has presented no reason why this Court should hold to the contrary. Thus, Plaintiff's objections which assert the Magistrate Judge erred in concluding there is no private right of action under the HCQIA will be overruled.

### 3. *The R.I.C.O. Claim*

The Magistrate Judge recommends dismissal of the R.I.C.O. count because "the overt acts complained of involve the alleged misrepresentation of facts relating to peer reviews of the plaintiff's competence as a physician, his application for or resignation of hospital privileges and 'stigmatizing' statements made about him," none of which "acts qualify as racketeering activity." (Docket Entry No. 85 at 8.) Plaintiff objects noting "[w]ire and mail fraud certainly qualify as acts of racketeering," (Docket Entry No. 86 at 15), and since he alleged the exchange of mail (particularly the sending of the reports to the NPDB and AHCA) and telephone calls, he stated a claim for relief under the civil R.I.C.O. statute.

Wire and mail fraud can be the predicate racketeering acts for purposes of R.I.C.O. However, merely mailing peer review committee results does not constitute mail fraud. Wasserman v. Maimonides Medical Center, 970 F.Supp. 183, 188 (E.D.N.Y. 1997).

Moreover, with respect to the reports which were sent to NPDB and AHCA, Plaintiff has failed to plead sufficient facts which would demonstrate that he relied on Defendants' alleged fraudulent

12

misrepresentation, something which is necessary to support a R.I.C.O. claim. Central Distributors of Beer, Inc. v. Conn, 5 F.3d 181, 184 (6th Cir. 1993); Blount Financial Services, Inc. v. Heller, 819 F.2d 151, 152 (6th Cir. 1987).

The facts as pled by Plaintiff are general allegations of fraud with no specificity as to how the statements were false. This is insufficient because allegations of fraudulent predicate acts are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. "In addition to alleging the particular details of a fraud, 'the plaintiff[] must allege facts that give rise to a *strong* inference of fraudulent intent.'" First Capital Asset Management, Inc. v. Satinwood, Inc., 358 F.3d 159, 179 (2d Cir. 2004)(emphasis in original, citation omitted). Citing acts without showing they are indictable is insufficient to survive a motion to dismiss. Howard v. America Online, 208 F.3d 741, 748 (9th Cir. 2000).

Here, Plaintiff has alleged no facts which would show the predicate acts are indictable or give rise to the strong inference of fraudulent intent on behalf of the Defendants. Accordingly, the Magistrate Judge was correct in ruling the Plaintiff's R.I.C.O claim failed to state a claim upon which relief could be granted and Plaintiff's objections to the contrary will be overruled.

### III. CONCLUSION

On the basis of the foregoing, Plaintiff's Objections (Docket Entry No. 86) will be overruled and the Magistrate Judge's Report and Recommendation (Docket Entry No. 85) will be adopted.

13

Defendants' Motions to Dismiss (Docket Entry Nos. 37, 45, 47, 49, 56 and 61) will be granted. Defendants' Motion to Strike Portions of the Complaint (Docket Entry No. 40) will be deemed moot. This case will be dismissed with prejudice.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE